## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ALEX CICCOTELLI, | : |
| | : Case No. _____ |
| Plaintiff, | : |
| | : JURY TRIAL DEMANDED |
| v. | : |
| | : **COMPLAINT FOR VIOLATION OF THE** |
| CIMAREX ENERGY CO., THOMAS E. | : **SECURITIES EXCHANGE ACT OF 1934** |
| JORDEN, PAUL N. ECKLEY, HANS | : |
| HELMERICH, KATHLEEN A. | : |
| HOGENSON, HAROLD R. LOGAN, JR., | : |
| FLOYD R. PRICE, MONROE W. | : |
| ROBERTSON, LISA A. STEWART, and | : |
| FRANCES M. VALLEJO, | : |
| | : |
| Defendants. | : |

Plaintiff, by his attorneys, for this complaint against defendants, alleges the following upon

personal knowledge with respect to himself, and upon information and belief based upon the

investigation of counsel as to all other allegations herein:

### NATURE OF ACTION

1.      On May 23, 2021, Cimarex Energy Co. ("Cimarex" or the "Company") entered into

an agreement and plan of merger (the "Merger Agreement") with Cabot Oil & Gas Corporation

("Parent") and Double C Merger Sub, Inc. ("Merger Sub," and together with Parent, "Cabot") (the

"Proposed Merger").

2.      Under the terms of the Merger Agreement, Cimarex's stockholders will receive

4.0146 shares of Parent common stock for each share of Cimarex common stock they own.

3.      On August 23, 2021, defendants filed a prospectus (the "424B3") with the U.S.

Securities and Exchange Commission (the "SEC").

4.      As alleged herein, the 424B3 fails to disclose material information regarding the

Proposed Merger, and defendants violated Sections 14(a) and 20(a) of the Securities Exchange

Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the Exchange Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9.

6.      This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper under 28 U.S.C. § 1391(b) because a portion of the transactions and wrongs complained of herein occurred in this District.

## THE PARTIES

8.      Plaintiff is and has been continuously throughout all relevant times the owner of Cimarex common stock.

9.      Defendant Cimarex is a Delaware corporation.  Cimarex's common stock is traded on the New York Stock Exchange under the ticker symbol "XEC."

10.      Defendant Thomas E. Jorden is President, Chief Executive Officer, and Chairman of the Board of Directors of Cimarex (the "Board").

11.      Defendant Paul N. Eckley is a member of the Board.

12.      Defendant Hans Helmerich is a member of the Board.

13.      Defendant Kathleen A. Hogenson is a member of the Board.

14.      Defendant Harold R. Logan, Jr. is a member of the Board.

15.      Defendant Floyd R. Price is a member of the Board.

16.     Defendant Monroe W. Robertson is a member of the Board.

17.     Defendant Lisa A. Stewart is a member of the Board.

18.     Defendant Frances M. Vallejo is a member of the Board.

19.     Defendants identified in ¶¶ 10-18 are referred to herein as the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

20.     Cimarex is an independent oil and gas exploration and production company with principal operations in the Permian Basin and Mid-Continent areas of the U.S.

21.     On May 23, 2021, Cimarax's Board caused the Company to enter into the Merger Agreement.

22.     The press release announcing the Proposed Merger provides as follows:

Cabot Oil & Gas Corporation ("Cabot") (NYSE: COG) and Cimarex Energy Co. ("Cimarex") (NYSE: XEC) today announced that they have entered into a definitive agreement whereby the companies will combine in an all-stock merger of equals. The combination will bring together two industry-leading operators with top-tier oil and natural gas assets to create a diversified energy leader that is positioned to drive enhanced free cash flow generation and returns for investors through market cycles.

Under the terms of the agreement, which has been unanimously approved by the Boards of Directors of both companies, Cimarex shareholders will receive 4.0146 shares of Cabot common stock for each share of Cimarex common stock owned. The exchange ratio, together with closing prices for Cabot and Cimarex on May 21, 2021, reflects an enterprise value for the combined companies of approximately $17 billion. Upon completion of the transaction, Cabot shareholders will own approximately 49.5% and Cimarex shareholders will own approximately 50.5% on a fully diluted basis.

"The combination of Cabot and Cimarex will create a free cash flow focused, diversified energy company with the scale, inventory and financial strength to thrive across commodity price cycles," Dan O. Dinges, Chairman, President and CEO of Cabot. "The combined business will be overseen by an experienced Board and a management team that is committed to a prudent strategy built on disciplined capital investment, strong free cash flow generation and increasing returns to shareholders. With its premier assets, increased resource diversity and a strong

financial foundation, the company will be well positioned to deliver long-term value creation for its shareholders and other stakeholders."

"This transformational merger will combine our top-tier assets and advance our shared focus on delivering superior returns for investors," said Thomas E. Jorden, Chairman, President and CEO of Cimarex. "We're building an even more resilient platform with greater financial strength in order to deliver sustainable, through-cycle returns on and of capital. We view commodity, geography and asset diversification as strategic advantages that will drive more resilient free cash flow and long-term value creation. We are aligned on our commitment to ESG and sustainability and look forward to bringing our talented teams together to unlock the tremendous potential of this compelling combination."

Strategic and Financial Benefits of Creating a Free Cash Flow Focused, Diversified Oil & Gas Producer

- • Premier Multi-Basin Exposure Will Enhance Scale, Diversity and Capital Optionality: With Cabot's approximately 173,000 net acres in the Marcellus Shale and Cimarex's approximately 560,000 net acres in the Permian and Anadarko basins, the combined business will have a multi-decade inventory of high-return development locations in the premier oil and natural gas basins in the United States.

- • Attractive and Sustainable Free Cash Flow Profile: Executing a disciplined capital allocation and reinvestment strategy, the combined business will be positioned to capitalize on its high-quality assets and diversification to drive through-cycle free cash flow generation across a wide range of commodity price scenarios. The company's low-cost and capital efficient inventory is expected to support its robust, cumulative free cash flow outlook of approximately $4.7 billion of free cash flow from 2022 to 2024 based on $55 per barrel WTI oil prices and $2.75 per MMBtu NYMEX natural gas prices.

- • Positioned to Accelerate the Return of Capital to Shareholders: The combined business will be well positioned to deliver enhanced capital returns to shareholders across a full range of market conditions through a multi-faceted program offering a sustainable base dividend that is positioned to grow over time, a variable dividend and a special dividend. The new business is expected to have an annual base dividend of $0.50 per share (representing a forward dividend yield of 2.8%), which is paid quarterly and plans to supplement the base dividend with a quarterly variable dividend to achieve a target capital return of at least 50% of quarterly free cash flow, with the first payment expected in the first quarter of 2022. The combined business also plans to declare and pay a $0.50 per share special dividend to all common shareholders of the combined business promptly after the closing of the transaction.

•    Substantial Cost Saving Opportunity: The companies are targeting annual general and administrative cost synergies of $100 million beginning within 18 months to two years following the closing.

•    Strong Balance Sheet: The combined business is expected to have a strong capital structure with minimal near-term debt maturities and a low cost of capital. Upon closing, the combined business is anticipated to have pro forma liquidity of $2.2 billion and will target a net debt-to-EBITDAX ratio of less than 1.0x. This strong financial foundation and broader scale is expected to provide flexibility and optionality for capital deployment.

•    Commitment to ESG and Sustainability: Cabot and Cimarex share commitments to environmental stewardship, sustainability and strong corporate governance. The combined business will build on the two companies' ongoing ESG efforts by, among other things, continuing to link executive compensation to ESG performance and maintaining strong board oversight of ESG risks and programs. The combined business is expected to report sustainability metrics pursuant to SASB and TCFD standards.

Headquarters, Leadership and Governance

The combined business, which will operate under a new name, plans to be headquartered in Houston and maintain its regional offices.

Upon closing, Mr. Dinges will serve as Executive Chair of the Board of Directors of the newly combined business and Mr. Jorden will lead the company as CEO and will serve on the Board of Directors. Scott Schroeder, Cabot's current Chief Financial Officer, will serve as CFO of the combined business. The remainder of the company's leadership team will include executives from both Cabot and Cimarex.

The Board of Directors of the company will be composed of five directors from the current Cabot Board of Directors, including Mr. Dinges, and five directors from the current Cimarex Board of Directors, including Mr. Jorden.

Timing and Approvals

The transaction is expected to close in the fourth quarter of 2021, subject to regulatory clearance, the approval of Cabot and Cimarex common shareholders and the satisfaction of other customary closing conditions.

Both Cabot and Cimarex intend to continue paying base quarterly cash dividends through closing.

Advisors

J.P. Morgan Securities LLC is serving as financial advisor to Cabot and Baker Botts L.L.P. is serving as its legal counsel. Tudor, Pickering, Holt & Co. is serving as financial advisor to Cimarex and Wachtell, Lipton, Rosen & Katz is serving as its legal counsel.

23.    On August 23, 2021, defendants filed the 424B3, which fails to disclose material information regarding the Proposed Merger.

Financial Projections

24.    The 424B3 fails to disclose material information regarding Cimarex's and Cabot's financial projections.  The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

25.    The 424B3 fails to disclose the line items used to calculate the financial projections for Cimarex and Cabot.

Financial Analyses

26.    The 424B3 fails to disclose material information regarding the financial analyses conducted by Tudor, Pickering, Holt & Co. ("TPH").  When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

27.    Regarding TPH's Net Asset Value Analyses, the 424B3 fails to disclose: (i) the line items used to calculate unlevered free cash flows; (ii) the inputs and assumptions underlying the discount rates utilized by TPH in the analyses; (iii) the values of the cash flows generated by the estimated proved developed reserves and undeveloped hydrocarbon resources, the future effects

of hedging, and the effects of general and administrative expenses, taxes, and non-drilling and completion capital expenditures utilized by TPH in the analyses; and (iv) the net debt and preferred equity utilized by TPH in the analyses.

28.     Regarding TPH's Discounted Cash Flow Analyses, the 424B3 fails to disclose: (i) the terminal values utilized by TPH in the analyses; (ii) the line items used to calculate unlevered free cash flows; (iii) the inputs and assumptions underlying the discount rates and multiples ranges utilized by TPH in the analyses; and (iv) the net debt, preferred equity, and number of fully-diluted outstanding shares utilized by TPH in the analyses.

29.     Regarding TPH's Has/Gets Analysis – NAV Accretion, the 424B3 fails to disclose: (i) the estimated fees and expenses utilized by TPH in the analysis; (ii) the inputs and assumptions underlying the discount rates utilized by TPH in the analysis; and (iii) the pro forma share count utilized by TPH in the analysis.

30.     Regarding TPH's Equity Research Analysts' Price Targets analyses, the 424B3 fails to disclose: (i) the price targets utilized by TPH in the analyses; and (ii) the sources of the price targets utilized by TPH in the analyses.

<u>Background of the Proposed Merger</u>

31.     The 424B3 fails to disclose whether TPH has conducted previous services for the parties to the Merger Agreement.  If so, the 424B3 must disclose the timing and details of the services and the fees received for conducting the services.

**COUNT I**

**Claim Against the Individual Defendants and Cimarex for Violation of Section 14(a) of the Exchange Act and Rule 14a-9**

32.     Plaintiff repeats and realleges the above-referenced allegations as if fully set forth herein.

33.     The Individual Defendants disseminated the false and misleading 424B3, which contained statements that, in violation of Section 14(a) of the Exchange Act and Rule 14a-9, in light of the circumstances under which they were made, failed to state material facts necessary to make the statements therein not materially false or misleading.

34.     Cimarex is liable as the issuer of these statements.

35.     The 424B3 was prepared, reviewed, and/or disseminated by the Individual Defendants.  By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the 424B3.

36.     The Individual Defendants were at least negligent in filing the 424B3 with these materially false and misleading statements.

37.     The omissions and false and misleading statements in the 424B3 are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Merger.

38.     A reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the 424B3 and in other information reasonably available to stockholders.

39.     The 424B3 is an essential link in causing plaintiff to approve the Proposed Merger.

40.     Accordingly, defendants violated Section 14(a) of the Exchange Act and Rule 14a-9.

41.     Plaintiff is threatened with irreparable harm.

## COUNT II

**Claim Against the Individual Defendants for Violation of Section 20(a) of the Exchange Act**

42.     Plaintiff repeats and realleges the above-referenced allegations as if fully set forth herein.

43.     The Individual Defendants acted as controlling persons of Cimarex within the meaning of Section 20(a) of the Exchange Act as alleged herein.

44.     Due to their positions as officers and/or directors of Cimarex and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the 424B3, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

45.     Each of the Individual Defendants was provided with or had unlimited access to copies of the 424B3 alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

46.     Each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same.

47.     The 424B3 contains the unanimous recommendation of the Individual Defendants to approve the Proposed Merger.  They were thus directly involved in the making of the 424B3.

48.     Accordingly, the Individual Defendants violated Section 20(a) of the Exchange Act.

49.     The Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and Rule 14a-9, by their acts and omissions as alleged herein.

50.     These defendants are liable pursuant to Section 20(a) of the Exchange Act.

51.     Plaintiff is threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief against defendants as follows:

A.      Preliminarily and permanently enjoining defendants and all persons acting in concert with them from consummating the Proposed Merger;

B.      In the event defendants consummate the Proposed Merger, rescinding it and setting it aside or awarding rescissory damages;

C.      Directing the Individual Defendants to disseminate a 424B3 that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.      Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as Rule 14a-9 promulgated thereunder;

E.      Awarding plaintiff the costs of this action, including reasonable allowance for attorneys' and experts' fees; and

F.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff requests a trial by jury on all issues so triable.

Dated:  September 16, 2021                **GRABAR LAW OFFICE**

                                          By:  _Joshua H. Grabar_
                                          Joshua H. Grabar (#82525)
                                          One Liberty Place
                                          1650 Market Street, Suite 3600
                                          Philadelphia, PA 19103
                                          267-507-6085
                                          jgrabar@grabarlaw.com

                                          *Counsel for Plaintiff*